(48 South. 756.)

No. 17,200.

W. L. NELSON & CO. v. ADOLPHE ROC-
QUET & CO., Limited.

(Feb. 15, 1909.)

1. RECEIVERSHIP PROCEEDINGS.

A creditor instituted proceedings to have a receiver appointed.

2. APPLICATION FOR RECEIVER.

The board of directors passed a resolution favorable to the application. The corporation filed an answer praying for the appointment.

3. RECEIVER APPOINTED.

The receiver was appointed.

4. NO APPEAL TAKEN.

The president prayed for a new trial, which was refused. Testimony was taken and application heard. The application for a new trial was refused.

No appeal was taken, and no attack in the pleadings was made subsequently to have the appointment vacated and the order of appointment recalled and annulled.

5. RECEIVERS (§ 58*)—APPOINTMENT EX PRO-
PRIO MOTU—VACATION.

Testimony on new trial had passed out; i. e., served its purpose.

The court, stating that an error had been committed, and referring to the testimony previously taken on the application for a new trial ex proprio motu, recalled and discharged the judgment previously rendered appointing a receiver.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 58.*]

6. JUDGMENT (§ 381*)—VACATION EX PROPRIO MOTU.

A judgment or decree cannot ex proprio motu be annulled in any material respect, much less can it be treated as an absolute nullity, the court having jurisdiction, and all the proceedings having been conducted contradictorily up to and including the judgment.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 725; Dec. Dig. § 381.*]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Walter Byers Sommerville, Judge.

Action by W. L. Nelson & Co. against Adolphe Rocquet & Company, Limited. Judgment for defendant, and plaintiff appeals. Reversed.

David Sessler, for W. L. Nelson & Co., appellant. Lazarus, Michel & Lazarus, for Gaspard Rudolf, stockholder, appellant. Cage, Baldwin & Crabites (Ross Edmond Breazeale, of counsel), for appellees.

BREAUX, C. J. The appointment of a receiver has given rise to the issues before us for decision.

W. L. Nelson & Co., creditors of Adolphe Rocquet Company, Limited, a corporation organized under the laws of this state, filed a petition in which they claimed that an amount over $1,000 was due them. They said in the petition that the exact amount would be given and a statement submitted, if necessary.

They apprehend that on account of the asserted insolvent condition of their debtor they would lose their claim.

The Rocquet Company were cited. They answered and admitted their indebtedness to W. L. Nelson & Co. in the amount claimed, and averred that they were unable to meet their obligations as they matured and as per a resolution of the board of directors at a meeting of the board. They averred that the company is insolvent, and that a receiver was necessary to preserve and administer the affairs of the concern in the interest of the creditors.

The district court, after having considered the petition and the affidavit, the proof and the answer of the defendant, and resolution of the board of directors, appointed James A. Robin receiver of the company upon his taking the oath and furnishing a bond of $5,000.

This was accordingly done, and Mr. Robin became the receiver of the Adolphe Rocquet Company, Limited. Letters of receivership were issued to him. He asked for an inventory, and also to be authorized to employ counsel, which was granted.

A few days thereafter, Adolphe Rocquet

came on his own personal account into court by rule and suggested to the court that he was the owner of 30 shares of the capital stock of the Rocquet Company, Limited, and that being the owner of 50 per cent. of the capital of the corporation he was interested. He had an interest in keeping up the autonomy of the corporation, especially as it bore his name. He urged that the company was not insolvent at the date of the order of the court, mentioned above, appointing a receiver, nor at any time since the date of the order. He attacked the resolution of the board of directors, admitting the insolvency of the company as "invalid, illegal, and irregular"; that it had not been adopted at a legal meeting of the board or of the stockholders; that Robin, the receiver, was not a creditor of the firm.

A rule was accordingly issued, directing Robin, "de facto receiver," to quote the words of plaintiff in rule, to show cause why the appointment should not be vacated.

Insurance companies that were engaged in business here, through the agency of Rocquet Company, joined him in asking that the order appointing a receiver be vacated. The Citizens' Bank, another creditor of the company, also joined in his defense.

On the day that this rule was filed, Robin, receiver, asked of the court to be authorized to engage the services of an expert accountant to examine the books and make due return to the court of the result.

The court appointed W. A. Brand, an expert accountant.

The receiver also obtained from the court authorization to pay the monthly rent for May, 1908.

About this time, another insurance company, the Allemania Fire Insurance Company, of Pennsylvania, another creditor, joined Mr. Rocquet in his application to have the receivership vacated.

Rocquet personally filed another rule, to the same tenor as the first he filed, in which he alleged that the appointment of the receiver was fatally irregular on the face of the papers.

The creditors first above named (Nelson & Co.) at whose instance a receiver was appointed, again filed a petition and annexed to it a complete account of their claim against Rocquet & Co., Limited, which they stated in the first petition they would file, if necessary.

There was evidence taken on the rule to vacate the appointment of a receiver. The expert accountant, Mr. Brand, testified at length; so did another expert accountant, Mr. Moses.

After they had testified, Mr. Rocquet in his own behalf, as plaintiff in rule, offered to testify. To his testifying, counsel for the receiver objected, on the ground that the judgment appointing the receiver was conclusive; that it could only be attacked in a direct action of nullity, or by appeal from the order making the appointment.

The court sustained the objection and excluded the testimony.

The testimony having been heard (June 4, 1908), on the trial of this rule, all except that of witness Rocquet, which was excluded as just above stated, the court rendered judgment on the rule to set aside the order appointing a receiver.

The judge of the district court dismissed the rules June 4, 1908. Judgment of dismissal was signed, June 10, 1908.

The court on the day preceding the order of dismissal had all the attorneys in the case notified that on the next day of the court the court intended to set aside the order of May 21, 1908, appointing Robin receiver.

On the appointed day, ex proprio motu, the court issued an order recalling and setting aside the order of the date just above stated, as having been issued in error.

The creditors, W. L. Nelson & Co., who had obtained the order appointing the receiver, filed a rule for a new trial, and alleged that the order setting aside the order appointing Robin receiver on May 21st preceding should not have been granted.

Their grounds are, briefly stated: That the court had no authority ex proprio motu to recall and set aside the judgment of May 21, 1908; that the only way this judgment could be set aside was by appeal or direct action in nullity; that the estate was not solvent.

The new trial was refused.

The plaintiff creditor, Nelson & Co., having applied for an appeal from the judgment rendered on the 9th day of June, Rocquet, appearing in his individual capacity, filed a petition praying that a suspensive appeal be denied. Among the reasons assigned by him was that he had made a tender of the amount of the claim of Nelson & Co.

This petition, alleging tender, was presented after motion of appeal had been made, but before it had been acted upon.

The court a qua did not act upon the matter of tender nor consider the tender.

Whether it was possible, in accordance with the rules of practice, for the court to set aside ex proprio motu the order appointing a receiver, gives rise to the question to which we have given earnest consideration.

Manifestly a judgment after it has been duly signed by the court cannot be recalled and annulled ex proprio motu.

That question has been decided in several cases. Jurisprudence upon the subject has been formulated under article 539 of the Code of Practice.

Unquestionably, the general rule applying to all judgments, it may now be considered thoroughly settled.

In one of the cases of this court, it appears that the district judge rendered an opinion on one day which he recalled and annulled the next day ex proprio motu. A new trial from the annulling judgment was applied for. The court denied the motion for a new trial.

On appeal the judgment thus rendered was reversed. Miller v. Chandler, 29 La. Ann. 91.

In this connection, our attention has been attracted to article 547 of the Code of Practice.

Prior to Act No. 159, p. 312, of 1898, the proceedings in administering solvent corporations were conducted under the equity jurisdiction of the court, a jurisdiction in this respect not always well defined.

The decision cited with confidence by learned counsel for appellee (State ex rel. Brittian v. City of New Orleans, 43 La. Ann. 832, 9 South. 643) is not in every respect controlling at this time.

In that case the court said:

"The power of courts to vacate such orders (orders appointing receivers), on motions of the party aggrieved *or even on their own motion*, is well established." (Italics ours.)

Since Act No. 159 of 1898, p. 312, was adopted, the jurisprudence on the subject is in the main controlled by statute. It is now on a firm statutory basis.

In any event the decision cited has not the force and effect the appellee imagines it should have. The proceedings to vacate the receivership in that case were conducted contradictorily with all parties concerned. It was in no respect ex proprio motu, and the utterance in the decision regarding ex proprio motu is not pertinent to the issue in the case. In fact it is obiter dictum.

After having arrived at the conclusion just expressed, we took up the decisions of this court rendered since the cited statute was enacted, and a few decisions of a date prior to the statute.

They all hold, in effect, even including the 43d Annual decision before cited (con-

taining the words "ex proprio motu"), that there is necessity to proceed contradictorily with all concerned in an application to vacate the appointment of a receiver.

We must stop here and decline to hold that a judgment or order of appointment can be vacated ex proprio motu.

Thus in Brewing Company v. Judge, 46 La. Ann. 100, 14 South. 615, the court specially mentioned the necessity of a rule.

To this we adhere.

We next, in the order of the issues presented, take up for decision the ground urged by appellee's counsel that the corporation is solvent.

To sustain this position, the appellee passes the judgment of June 4, 1908, ignores it entirely, and takes up the testimony which was taken on appellee's rule for a new trial (refusing it)—that is, the judgment of June 4, 1908—and contends that the corporation was solvent.

We do not think that the question of solvency can be considered at this time and on the appeal from the judgment signed on June 15, 1908.

If the order appointing the receiver was null and void, if it had been rendered without notice, without proof, the contention would have some merit. It has none.

When parties, as in this case, introduce their testimony before a court of competent jurisdiction, and the court finds insolvency and appoints a receiver, the proceedings are not null and void.

If there was error in weighing the evidence, it cannot be corrected ex proprio motu. The case having been tried on the merits, the judgment cannot be merely canceled as if it were nothing.

The rule laid down in article 548 of the Code of Practice is plain.

In argument, learned counsel for appellee cited decisions in other jurisdictions under different laws.

123 LA.—4

These decisions are not controlling, as they do not accord with our own laws regarding judgments and decrees.

Another ground presented by appellee is that Act No. 159, p. 312, of 1898, did not introduce a new system in our practice; it only embodied a rule, well defined in our jurisprudence at the time of the adoption of the act, that the act was made necessary by the exigencies of modern life.

We agree with that view. We, none the less, do not find it possible to decide that all formal rules or petitions can be dispensed with in an application to remove a receiver.

The appellee is next pleased to state that he might have appealed from the order appointing a receiver.

He did not, and for that reason the grounds which he might have brought up on appeal are not before us.

The next position of appellee as relates to the judgment of June 9, 1908 (that is, the ex proprio motu judgment), is that he had a right to go into the truth of the averments of the petition for the appointment of a receiver in which the corporation was charged with insolvency.

By rule to show cause:

True, the appellee filed rule to show cause why a new trial should not be granted from the judgment of May 22d.

A new trial was not granted. No appeal having been taken, there was an end of the issue as relates to that judgment.

Instead of appealing, appellee invokes the ex parte order as sufficient to set aside the judgment which he did not succeed in having set aside on his application for a new trial.

Learned counsel for appellant says that it was manifest on the face of the papers that no receiver should have been appointed originally; and in the second place, that the

evidence was heard contradictorily with all parties, establishing proof of solvency.

We have already substantially stated that this rule was from the judgment; that it was denied, and there is an end to it. We cannot now consider the question of solvency which came up before the court on plaintiff's rule for a new trial.

. Appellee, in addition to the matter of solvency just referred to, urges that on the face of the papers no receiver should have been appointed, because petitioners Nelson & Co. are creditors and not stockholders.

In answer,. we will state one of the parties to these proceedings is G. Rudolf, one of the stockholders of the company who asked for the appointment of a receiver. He held 30 shares of stock. He is before us as an appellant in this case, so that we not only have a creditor but a stockholder asking that the judgment of June 9, 1908, be decreed null.

Appellee also urged that the resolution of the board of directors asking for the appointment of a receiver, is defective and illegal, because it asked that an officer be appointed as receiver to take charge of and administer the affairs of the corporation, and did not ask for such an appointment to "preserve" the property.

In other words, the petition of appellee is that this resolution is fatally defective because it does not contain the word "preserve"—word used in the statute; that the use of the word "administer" alone is not sufficient; that administration demands ability, while preservation demands honesty, and for that reason the resolution should contain both words as the law ordains; that the resolution should declare that a receiver is necessary to administer the affairs and preserve the property.

We have only this to say: Administration in matter of the proceedings here implies to preserve.

Besides, the answer of the board of directors of which the resolution forms part is that a receiver is necessary to "administer and preserve the property."

This we consider entirely sufficient.

The last ground of the appellee we have reviewed is that the only purpose on his part is to have an order improvidently made recalled.

To this we can only say in answer that. viewed from any possible angle, the order appointing a receiver is informal and illegal.

It cannot stand.

We do not consider the question of tender before us for decision.

We might have stopped long since in matter of deciding this case.

We took up the different grounds in order to become entirely satisfied that there was no nullity which could possibly justify the decision rendered from which the appeal was taken.

It is ordered, adjudged, and decreed that the judgment rendered June 9, 1908, signed June 15, 1908, is avoided, annulled, and reversed, at appellee's costs in both courts.